Elvin JOHNSON, Appellant,

v.

UNITED STATES, Appellee.

No. 88–689.

District of Columbia Court of Appeals.

Argued March 29, 1989.

Decided April 7, 1989 *.

M. Elizabeth Kent, Washington, D.C., appointed by this court, for appellant.

\* The disposition of this case was issued originally in the form of a Memorandum Opinion and Judgment on April 7, 1989, and is being publish-

Roberto Iraola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Helen M. Bollwerk and Lisa A. Gok, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, BELSON, and STEADMAN, Associate Judges.

BELSON, Associate Judge:

A jury convicted appellant of armed robbery (D.C.Code §§ 22–2901 (1981), 22–3202 (1981 & 1988 Supp.)) and carrying a pistol without a license (D.C.Code § 22–3204 (1981)). On September 15, 1981, appellant was sentenced to concurrent terms of imprisonment of ten to thirty years for armed robbery and one year for carrying a pistol without a license. The District of Columbia Board of Parole petitioned the trial court for a reduction of appellant's minimum sentence pursuant to D.C.Code § 24–201c (1981). The trial court denied the Board's request and appellant appeals, contending that the trial court abused its discretion by placing undue reliance on appellant's failure to admit his guilt and demonstrate remorse as well as by ignoring appellant's exemplary prison record. Finding no abuse of discretion, we affirm.

■ In the first instance, the decision whether to petition the court for a reduction of a sentence of incarceration is committed to the Board of Parole based on its determination of whether "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society...." D.C.Code § 24–201c. Ultimately, however, the decision whether to grant such a request is committed to the sound discretion of the trial court. *See Williams v. United States*, 421 A.2d 19, 24 (D.C. 1980). While the statute focuses on the future conduct of the prisoner, it also permits the weighing of the general welfare of society. Thus, society's interest in visiting

ed upon the court's grant of appellee's motion for publication of opinion.

appropriate punishment upon those convicted of criminal offenses as well as in insuring that the time served is adequate for purposes of deterrence are appropriate factors for the court to weigh in considering a petition by the Board of Parole under § 24–201c. *See United States v. McIlwain,* 427 F.Supp. 358, 359 (D.D.C.1977); *United States v. Forbes,* 113 Daily Wash.L. Rptr. 305, 308 (D.C.Super.Ct. Jan. 4, 1985).

■ Appellant argues first that the trial court placed undue emphasis on his failure to accept responsibility for the crimes for which he was incarcerated and his failure to demonstrate remorse. It is true that in its order denying the Board's petition the trial court did indeed place some weight, apparently substantial weight, on appellant's continued denial of responsibility for the crimes that he was convicted of committing. Individual trial courts have differed on the significance of a prisoner's admission of guilt and demonstration of remorse in the context of a petition under § 24–201c. *Compare McIlwain, supra* (attaching significance to lack of remorse) with *Forbes, supra* (criticizing attachment of significance to lack of remorse).

Naturally, the weight that a court accords these factors may vary depending on the particular facts and circumstances surrounding each individual case. In this case, the trial court also considered the strength of the government's evidence, the particular facts of the crime, and surrounding circumstances: These included that the police discovered two loaded guns in the car in which they found appellant and that, at the time of the crime, appellant was on parole from Prince Georges County where he had served a prison term for armed robbery with a deadly weapon. Also, appellant was subject to a detainer from Prince Georges County as a parole violator. Under these circumstances, we cannot say the trial court abused its discretion in weighing substantially appellant's failure to admit his guilt and to demonstrate some remorse. *See McIlwain, supra.*

As to appellant's other contention, it is clear from the written order denying the Board's petition that the trial court did not ignore appellant's exemplary behavior while in prison. In its petition to the court, the Board of Parole recited in great detail appellant's progress and many worthy accomplishments while in prison. In its order, the trial court stated, "[a]fter careful consideration of all the evidence presented by the Board of Parole in its petition ... this Court is of the opinion that this petition ... is premature and should be denied." Thus, we cannot agree with appellant that this aspect of his record was ignored by the trial court.

*Affirmed.*

NEWMAN, Associate Judge, concurring:

Given the majority's decision to grant the United States' motion to publish the Memorandum Opinion and Judgment Order previously entered in this case, I write separately to set forth in full the trial court's Memorandum Opinion in this case and to contrast it with the Memorandum Opinion by Judge Henry Kennedy in *United States v. Forbes,* 113 Daily Wash.L.Rptr. 305 (D.C. Super.Ct. January 4, 1985), an opinion also cited by the majority. While I join the majority in finding no abuse of discretion in this case, the analytical approach of Judge Kennedy commends itself to me. Perhaps it will to others, also.

The text of Judge Ryan's opinion is as follows:

"On December 18, 1987, the District of Columbia Board of Parole delivered to Chief Judge Ugast a petition for reduction in minimum sentence in the above-captioned case. The petition was promptly forwarded to this Court as sentencing judge. Upon receipt of this petition, this Court consulted the U.S. Attorney's Office to determine if the government had any opposition to this petition. The government asked for sixty days in which to file its opposition. The Court granted this request. On February 19, 1988 the government inadvertently filed its opposition with the Board of Parole rather than with this Court. To further complicate matters, the Board of Parole erroneously issued an order denying the petition. On March 9,

1988, this Court contacted the Board of Parole. The Board rescinded its order as of that date. The petition and government opposition are now properly pending before this Court.

"Defendant Elvin Johnson is currently serving concurrent sentences of ten to thirty years for armed robbery and one year for carrying a pistol without a license. This sentence was imposed by the Court following a jury trial in which defendant was found guilty of the above two charges. At the time he committed the robbery, defendant was on parole from Prince Georges County where he had served a prison term for armed robbery with a deadly weapon. Defendant has a detainer from Prince Georges County as a parole violator.

"The Board of Parole has now requested that the Court reduce the minimum term of defendant's sentence so that he may be released immediately. The Board of Parole believes the defendant can '... live and remain at liberty without violating the law and that his immediate release on parole will not be incompatible with the welfare of society.' Petition for Reduction in Minimum Sentence, page 1. The U.S. Attorney's Office for the District of Columbia vehemently opposes the Board of Parole's request for reduction in Mr. Johnson's minimum sentence. In its opposition, the government identifies the substantial amount of evidence connecting Mr. Johnson to this crime. For example, defendant Johnson was identified by the complaining witness shortly after the crime was committed. Furthermore, two loaded guns were discovered in the car in which Mr. Johnson was found by the police. The complaining witness' overcoat and sports coat were found in the trunk of the car. Despite this overwhelming evidence of guilt, the defendant elected to go to trial. The defendant maintained his innocence throughout the trial. However, the jury found the defendant guilty of both armed robbery and carrying a pistol without a license.

"The Board of Parole filed its petition for reduction in minimum sentence pursuant to § 24–201c of the District of Columbia Code (1981). The pertinent portion of this code section provides as follows:

When by reason of his training and response to the rehabilitation program of the Department of Corrections it appears to the Board that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society, but he has not served his minimum sentence, the Board in its discretion may apply to the court imposing sentence for a reduction of his minimum sentence. *Id.*

"The Board invokes this section to reduce Mr. Johnson's minimum sentence to time served. In weighing a petition by the Board of Parole for a reduction of defendant's minimum sentence to time served, the Court looks at three factors: (1) whether the time served by defendant is adequate to deter others from committing crimes; (2) whether the time served by defendant will satisfy society's desire for a punishment that fits the offense; and (3) whether defendant is likely, if released, to commit other crimes. *U.S. v. McIlwain*, 427 F.Supp. 358 (D.D.C.1977). In addition to these three factors, the *McIlwain* court noted that a defendant's 'deep, genuine remorse' for the crime[s] for which he is being punished is 'the first and best indication of [his] rehabilitation' and of major importance in determining whether to grant an application to reduce his sentence. *Id.*, at 359. *See also U.S. v. Liddy*, 397 F.Supp. 947, 949 (D.D.C.1975), *aff'd*, 530 F.2d 1094 (D.C.Cir.1976).

"This Court reviewed the District of Columbia Board of Parole's petition for reduction in minimum sentence as well as the court jacket in case number F 293–81. After careful consideration of all the evidence presented by the Board of Parole in its petition and by the government in its opposition to the petition, this Court is of the opinion that this petition for reduction in minimum sentence is premature and should be denied. This Court is troubled by the fact that seven years after his conviction, defendant still refuses to take responsibili-

ty for committing the violent crimes of armed robbery and carrying a pistol without a license. Rather than accept responsibility, defendant has continued to deny his guilt to the jury, who rejected his version of the facts, to the Board of Parole and to himself. Defendant's refusal to acknowledge his guilt indicates to the Court that the dual purposes of deterrence and rehabilitation have not yet been accomplished in his case.

"The Court also has doubts as to defendant's ability to abide by the law if released. Defendant has two prior convictions in Prince Georges County, Maryland. On May 29, 1975, he was sentenced to three years of probation for attempted robbery. On June 7, 1977, he was sentenced to eight years in jail for armed robbery. He was paroled on August 1, 1980. Approximately one year after being released on parole, defendant committed the two crimes for which he is presently incarcerated.

"Accordingly, based on the foregoing discussion, it is this 29th day of March, 1988,

"ORDERED, That the District of Columbia Board of Parole's Petition for Reduction of Minimum Sentence filed on behalf of Elvin Johnson in case number F 293–81 is hereby denied."

The text of Judge Kennedy's opinion is as follows:

"This matter is before the Court on the application of the District of Columbia Board of Parole (hereinafter the Board) for a reduction of the minimum sentence of Dexter Anton Forbes, a prisoner in the custody of the District of Columbia Department of Corrections, to the time he has served. The Board may make such an application under D.C.Code § 24–201c which in pertinent part states:

When by reason of his training and response to the rehabilitation program of the Department of Corrections it appears to the Board that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society, but he has not served his minimum sentence, the Board in its discretion may apply to the Court imposing sentence for a reduction of his minimum sentence. The Court shall have jurisdiction to act upon the application at any time prior to the expiration of the minimum sentence and no hearing shall be required.

"Upon consideration of the Board's application, the United States Attorney's opposition thereto, the papers filed in support of and in opposition to the application, and a thorough review of the record of this case, the Court concludes that the application should be granted.

"FACTS

"On the evening of November 3, 1973, Clarence L. Johnson, Jr. and three companions were walking toward Fast Eddie's Carryout when they were approached by a man carrying a sawed-off shotgun. The assailant demanded that Mr. Johnson give him 'the bam.' [1] When Mr. Johnson responded that he did not have any 'bam,' the assailant forced Mr. Johnson at gunpoint into a nearby church doorway, took ten dollars from him and shot him in the side of his mouth. Mr. Johnson made his way into the carryout where he waited for the ambulance which transported him to the hospital.

"While in the hospital, Johnson was shown a stack of photographs (which included a picture of Dexter Forbes) by Detective Miller but failed to identify Mr. Forbes' picture. Detective Miller returned a short time later and showed Mr. Johnson the same group of photographs. This time Mr. Johnson identified Mr. Forbes. At trial he testified that he had not identified Mr. Forbes the first time the pictures were shown to him because he wanted to avenge the assault himself, but after reflection he had decided to let the police handle the matter.

"At trial, Mr. Johnson again identified Mr. Forbes as his assailant. Mr. Johnson's brother, Walter, who had been with him on

1. "Bam" is the street name for the amphet-    amine, phenmetrazine.

the night in question gave a general description of the assailant consistent with Mr. Forbes' appearance. Detective Miller testified that before he showed the photographs to Johnson a second time he assured Mr. Johnson that if he was afraid to identify anyone, the police would protect him.

"The defense presented seven witnesses. Three persons testified that they were in the vicinity of Fast Eddie's on the night in question, that they knew Dexter Forbes and that he was not the assailant. Three persons testified that they were with Mr. Forbes that evening and that he was in a different part of town at the time of the shooting. The jury reached a partial verdict finding Mr. Forbes guilty of assault with intent to commit robbery while armed and assault with a dangerous weapon, and the Court granted a mistrial on several other counts upon which the jury could not decide.[2]

"On June 18, 1975, the Honorable John Hess sentenced Mr. Forbes to a prison term of fifteen to forty-five years to run consecutive to the three to nine year sentence which Mr. Forbes was then serving for his prior conviction of the felony offense of carrying a dangerous weapon. On July 12, 1975, this sentence was reduced to ten to thirty years when Judge Hess granted Mr. Forbes' motion for a reduction in sentence. On July 20, 1984, the Board presented[3] the present application for reduction of Mr. Forbes' minimum sentence to the time he has served.[4] Mr. Forbes has served over eight years of his ten year minimum sentence.

**2.** This statement of facts is taken verbatim from the District of Columbia Court of Appeals Opinion affirming Mr. Forbes' conviction. *Forbes v. United States,* D.C.App., 390 A.2d 453–55 (1978).

**3.** The Court can think of no better way to characterize how this matter came to its attention. The application was mailed to the Judge's chambers. It was not made a part of the official record in this case, i.e., filed, or made the subject of a separate action, and was not served on any other party. While the statute pursuant to which this application is made does not indicate what procedures are to be followed, it is this

"DEXTER FORBES'
CRIMINAL HISTORY

"Dexter Forbes is thirty years old and has been a lifelong resident of the District of Columbia. At the age of fifteen his parents separated due to his father's abuse of him and his mother. During this period, Mr. Forbes began his antisocial behavior which spanned a four year period and culminated in his incarceration at the youthful age of twenty.

"Mr. Forbes was first committed to the Lorton Youth Center in January 1973 for observation and study under the Federal Youth Corrections Act, 18 U.S.C. § 5010(e), after being convicted of carrying a pistol without a license. For this offense Mr. Forbes was sentenced to a term of probation under the Federal Youth Corrections Act, 18 U.S.C. § 5010(a). On November 3, 1973, while on probation, Mr. Forbes committed the felony offense of carrying a dangerous weapon and on August 15, 1974 was convicted of possession of a controlled substance. For these offenses Mr. Forbes was committed under § 5010(b) of the Federal Youth Corrections Act.

"After he served the sentences imposed following his convictions for possession of a controlled substance and carrying a dangerous weapon Mr. Forbes, on June 28, 1975, began service of the sentence for which he is presently incarcerated.

"ANALYSIS

"In its application for a reduction of Dexter Forbes' minimum sentence the Board indicates that Mr. Forbes has been a model prisoner for many years. He has not incurred any institutional disciplinary reports

Court's view that Board applications to reduce minimum sentences should be filed in the original criminal court jacket and should be served on the United States Attorney whose office clearly has a valid interest in such applications. In this case, the Court mailed the Board's application to the United States Attorney and sought his response.

**4.** In 1981 Mr. Forbes requested the Board to make an application to the Court for reduction in his minimum sentence. On August 14, 1981, the Board denied this request.

since March 1978 and has taken full advantage of the Department of Corrections rehabilitation programs. The Board points out that Mr. Forbes has been a good role model for his fellow inmates. For example, he has served as a clerk typist for the prison college coordinator for the District of Columbia Department of Corrections for several years, has worked for the acting supervisor of education of the academic school, and has performed various special projects in the academic school records office. In addition, Mr. Forbes has continued his studies at the University of the District of Columbia Lorton Extension Program, a program in which he maintained a B average and for which this past July he received an Associate of Arts Degree.

"The Board also indicates that Mr. Forbes has been examined by several psychologists and psychiatrists who indicate that 'there are no psychiatric contraindications to his [Mr. Forbes] being considered for a reduction in minimum sentence.' The experts' opinion in this regard is corroborated by many people, including supervisors of his prison details, who know Mr. Forbes and have expressed the opinion that he is now capable of conducting himself as a responsible and law-abiding citizen.[5]

"Finally, the Board's application reveals that Mr. Forbes has considerable community resources which would aid him in his adjustment to community life should he be released. His mother has offered her home as a place for him to live and he has been offered employment as a paralegal assistant at a local law firm and as a security aid with the District of Columbia Public School System.

"Based on these considerations the Board urges the Court to grant this application for reduction in Mr. Forbes' minimum sentence to the time which he has served so that he will be immediately eligible for parole.

"The United States Attorney vigorously opposes the Board's application. Its opposition is based primarily on two considerations. First, the United States Attorney points out that the crime which Mr. Forbes committed was particularly gruesome, one for which a ten to thirty year sentence should be considered lenient. Second, the United States Attorney observes that Mr. Forbes persists in his claim of innocence. Referring to the oft stated belief that the first step in rehabilitation is acceptance of responsibility for one's crime, the United States Attorney suggests that it is doubtful that Mr. Forbes is truly rehabilitated.

"With respect to the United States Attorney's position that the time which Mr. Forbes has served already does not constitute just deserts for the terrible crime which he committed, the Court observes first that the statutory provisions which authorize the Board to apply for a reduction in a prisoner's minimum sentence direct the Board to consider whether 'there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society.' These provisions do not expressly indicate that just deserts is a factor to be considered either by the Board in deciding whether to apply to the Court for a reduction in a minimum sentence or by the Court in deciding whether to grant it. The statute's focus is entirely prospective requiring the Board and presumably the Court to predict a prisoner's future behavior.

"Notwithstanding the statute's strictly future orientation, the Court agrees with the underlying premise of the United States Attorney's argument. In determining whether to grant a Board application for a reduction of a prisoner's minimum sentence consideration should be given to whether granting the application would unduly and inappropriately diminish the community's interest in exacting retribution from those who offend it by breaking its laws. While in this case, as in many other cases, it is difficult to determine the amount of punishment, i.e., incarceration, which adequately fits the crime, a judg-

---

5. These opinions are expressed in letters sent to the Department of Corrections and to the Board.

ment necessarily involving a myriad of factors, the Court notes that Mr. Forbes by any objective measure has served a substantial period of time in prison and has paid a dear price for his crime. In terms of the magnitude of the time which Mr. Forbes has spent behind bars for this crime—eight and one half years—it is useful to consider that during this same period of time there was someone who entered and completed college, finished law school, and completed the first year of her legal career. It is also useful to consider that Mr. Forbes began serving this sentence when he was twenty years old and were he to be paroled immediately would be released at the age of thirty one. In our society, these years are thought by many to be some of the finest a person may have.

"The Court is of the view that to grant this application making it possible for the Board to parole Mr. Forbes immediately would not result in Mr. Forbes receiving the proverbial slap on the hand as punishment for his crimes. The Court believes that eight and one half years are sufficient to satisfy society's desire for just punishment. The Court also points out that the effect of an order authorizing release at this time would be to *permit* parole only approximately one year in advance of when the Parole Board would have the authority to grant parole without a court order reducing Mr. Forbes' minimum sentence.

"Turning to the United States Attorney's argument that the Board's application should not be given favorable consideration because Mr. Forbes persists in his claim of innocence, the Court agrees that many times the first step in the process of rehabilitation is the recognition and acknowledgement by an offender that he has done wrong. However, in this case the Court will not deny the Board's application because Mr. Forbes still maintains his innocence for two reasons. First, the Board indicates that while claiming that he did not commit the crime for which he was convicted Mr. Forbes acknowledges that he committed many other crimes for which he was

never apprehended. Therefore, he does not feel embittered by his present incarceration and does not evidence any sign that he believes he has been mistreated. Second, while the Court assumes that Mr. Forbes is guilty since he was convicted at a fair trial by a jury of his peers it is simply not outside of the realm of the possible that Mr. Forbes is in fact innocent as he claims. The burden of proof placed upon the prosecution at a criminal trial is to prove that the accused committed each and every element of the offense charged beyond a reasonable doubt. In the District of Columbia juries are told that the government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty. Therefore, the Court does not believe that it is required to blink the reality that there is margin for error and that undoubtedly some probably minute percentage of persons are convicted of crimes although they did not commit them.[6] Therefore, this Court shall not use acknowledgment of guilt as a litmus test for determining whether it should grant the Board's application.

"Therefore, for the reasons stated above and, after careful consideration being given to the position of the Board and the United States Attorney, the Court this 4th day of January, 1985, hereby,

"ORDERS, that the Board's application for a reduction of the minimum sentence of Dexter Anton Forbes be, and the same hereby is, granted."

---

**6.** *See* Gest, *When Nightmare Of False Arrest Comes True,* U.S. News and World Report, 45– 47 (17 December 1984).