James HINES, a/k/a James Murray, Appellant,

v.

DISTRICT OF COLUMBIA BOARD OF PAROLE, Appellee.

No. 87–1468.

District of Columbia Court of Appeals.

Argued Oct. 24, 1989.

Decided Dec. 28, 1989.

Michael Stern, Washington, D.C., for appellant.

Before ROGERS, Chief Judge, SCHWELB, Associate Judge, and REILLY, Senior Judge.

ROGERS, Chief Judge:

Appellant James Hines appeals from the grant of summary judgment to the D.C. Board of Parole (Board) after his request under the District of Columbia Freedom of Information Act (FOIA), D.C.Code § 1–1521 *et seq.* (1981), for disclosure of Board records relating to applications for reduction of minimum sentence under D.C. Code § 24–201c (1981) was denied and he filed suit to compel disclosure. The trial judge ruled that the records were confidential and personal to the inmates involved and, therefore, within the privacy exemption of § 1–1524(a)(2). In view of the unfocused request for a mass of documents, some of which are exempt from disclosure, we affirm.

I.

Appellant, James Hines, an inmate at the Lorton Maximum Security Facility,[1] seeks records from the Board pertaining to applications for reduction of minimum sentence under D.C.Code § 24–201c. He began in 1971 or 19'2 to do research on sentence reduction and the mechanisms used by the Board in determining the eligibility of an inmate for sentence reduction and was informed that only two or three people had received a reduction of their sentences. Accordingly, in March and April of 1984 he wrote to the Board requesting access to copy documents pertaining to the applications for reduction of minimum sentences filed pursuant to D.C.Code § 24–201c on behalf of inmates in the Lorton Maximum Security Facility since 1972. On June 29, 1984, the Executive Director of the Board denied his request on the ground that the

---

1. According to the government's brief, Superior Court records indicate that he is serving a term of 15 years imprisonment for armed robbery and a consecutive sentence of 20 to 60 months for a violation of the Bail Reform Act in addition to other concurrent sentences. Appellant testified that his application for reduction of his minimum sentence had been denied by the Board in 1984.

information requested was "confidential and only available to the petition applicant, Board of Parole and institutional authorities." [2] Thereafter, on August 22, 1984, appellant filed a complaint for injunctive relief seeking disclosure of the records under the FOIA. *See* D.C.Code § 1–1527(a)(2).

The Board filed a motion for summary judgment on the grounds that the requested documents were exempt from disclosure as (1) "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," D.C. Code § 1–1524(a)(4) (1981), citing *Durns v. Bureau of Prisons,* 256 U.S.App.D.C. 156, 160, 804 F.2d 701, 705 (1986), *reh'g en banc denied,* 257 U.S.App.D.C. 30, 806 F.2d 1122 (1986) (public availability of presentence reports would likely inhibit flow of information to sentencing judge); and as (2) "so personal in nature as to be a 'clearly unwarranted invasion of the personal privacy' of the subjects," D.C.Code § 1–1524(a)(2) (1981). The Board also stated that disclosure of psychological reports forwarded to the Board by the Department of Corrections would be prohibited under the District of Columbia Mental Health Information Act, D.C.Code §§ 6–2001 *et seq.* (1989 Repl.); *see also* D.C.Code § 6–2026. By affidavit the chairperson of the Board stated that the information in the supporting documentation is very personal and redaction of names, addresses and id[entification] numbers would not preclude identification of the subjects of the reports.[3] Appellant responded with his own motion for summary judgment arguing that the

records are public information and should be open to public inspection, noting that the trial judge could review them *in camera,*[4] and that he was entitled to judgment as a matter of law since the requested documents were not functionally equivalent to presentence reports, citing *Williams v. United States,* 421 A.2d 19 (D.C.1980).[5]

At a hearing on the cross motions for summary judgment, appellant testified, at one point, that he was not seeking the applications for reduction of sentence or presentence reports or any psychological reports or evaluations, which he recognized might be exempt from disclosure under FOIA, but rather was interested in the procedures that the Board uses for deciding whether to seek a reduction of sentence. Subsequently, however, in response to the trial judge's inquiries about the records he sought, appellant stated that he still wanted access to supporting data such as the Corrections Department's progress reports, officers' observations, and recommendations, as well as any information about deals that inmates might have made with the government in return for reduced charges or sentences. The judge granted the Board's motion for summary judgment on the ground that the records sought by appellant—the progress reports and the matters that constitute a person's records in the correctional facility—were exempt under D.C.Code § 1–1524.

## II.

Appellant contends on appeal that the records at issue—pre-sentence reports,

2. There is nothing in the record to reflect that appellant filed a request with the Mayor. However, under D.C.Code § 1–1522(d) (1981), he is deemed to have exhausted his administrative remedies since the Board did not respond to his request within ten days.

3. The chairperson of the Board also stated that (1) the Board does not have in its possession records of petitions for reduction of minimum sentence prior to December 1986, and (2) records in its possession include presentence reports, psychological evaluations, progress reports, academic reports, and supportive letters from institutional personnel and other interested parties to the Board.

4. The government opposed appellant's motion for *in camera* inspection of the records, citing *Allen v. Central Intelligence Agency,* 205 U.S. App.D.C. 159, 636 F.2d 1287 (1980) (government must be afforded opportunity to justify nondisclosure before court undertakes *in camera* inspection).

5. In *Williams, supra,* 421 A.2d at 24, the court stated that application by the Board for a reduction of minimum sentence was not the equivalent of a certificate of rehabilitation under D.C. Code § 14–305(b)(2)(A)(ii) (1973).

mental health assessments, academic records, records concerning inmates' institutional adjustment and progress—are of a public nature and should be released pursuant to FOIA. The Board maintains that because of the nature of the records and their similarity to presentence reports, the purposes and intent of the exemption for privacy under § 1–1524 prohibits their disclosure.

One of the exemptions to disclosure under FOIA provides that "information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." D.C. Code § 1–1524(a)(2). This court has long recognized that the legislative judgment in favor of broad release of public information is limited only by narrow statutory exemptions.[6] *E.g. Dunhill v. Director, District of Columbia,* 416 A.2d 244 (D.C. 1980) (list of holders of valid drivers' permits not exempt from disclosure under D.C.Code § 1–1524(a)(2) and (c)). *See also Newspapers, Inc. v. Metro. Police Dept.,* 546 A.2d 990 (D.C.1988) (ordinance prohibiting disclosure of arrest records not a "statute" under § 1–1524(c)); *Barry v. Washington Post Co.,* 529 A.2d 319 (D.C.1987) (equity power of court cannot create additional exemptions; mayor's expense records not within exemptions under § 1–1524(a)(3) or (6)). Because the FOIA is modeled on the corresponding federal statute, 5 U.S.C. § 552 (1982), we have looked to decisions under the federal act in guiding our interpretation of the FOIA. *See Barry v. Washington Post, supra,* 529 A.2d at 321.

Under the federal freedom of information statute and rules, courts are generally reluctant "to give *third parties* access to the presentence investigation report prepared for some other individual or individuals." *United States Dept. of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988) (emphasis in original) (see cases cited therein). The Supreme Court has recently affirmed that exemptions under the federal FOIA require a court to balance the privacy interests of those who are the subject of the documents in question or those who may be harmed by their release against the public interest in the release of the documents.

In *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* — U.S. —, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989), the Court held that FBI rap sheets fell within the exemption from disclosure provision for personal privacy. 5 U.S.C. § 552(b)(7)(C).[7] In examining the nature of the exemption the Court concluded that the "standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files." — U.S. at —, 109 S.Ct. at 1473. Focusing only on the kind of privacy interest that concerns the interest of the individual in privacy,[8] the Court declined to adopt a "cramped notion of personal privacy" based on the fact that events summarized in the rap sheet have previously been disclosed to the public. *Id.* at —, 109 S.Ct. at 1476. The Court viewed the issue as "whether the compila-

---

**6.** On review of the granting of summary judgment, this court makes an independent review of the record. *Patrick v. Hardisty,* 483 A.2d 692, 696 (1984); *Phenix–Georgetown, Inc. v. Chas. H. Tompkins Co.,* 477 A.2d 215, 221 (D.C.1984). Our standard of review is the same as that of the trial court in initially considering the motion. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983); *Wyman v. Roesner,* 439 A.2d 516, 519 (D.C.1981); Super.Ct.Civ.R. 56(c) (1989).

**7.** 5 U.S.C. § 552(b)(7)(C) provides in pertinent part that records or information compiled for law enforcement purposes are exempt from disclosure, "but only to the extent that the production of such [materials] ... would reasonably

be expected to constitute an unwarranted invasion of personal privacy." Unlike the FOIA, D.C.Code § 1–1524(a)(2), quoted, *infra,* the federal statute, as amended in 1974, does not include the word "clearly" as a modifier to the phrase "unwarranted disclosure".

**8.** The Court observed that there were at least two different privacy interests discussed in cases, one involving the individual interest in avoiding disclosure of personal matters and another interest in independence in making certain kinds of important decisions. *Id.* at —, 109 S.Ct. at 1476.

tion of otherwise hard-to-obtain information alters the privacy interest implicated by disclosure of that information." *Id.* at ——, 109 S.Ct. at 1477. Relying on the legislative indication based on a "careful and limited pattern of authorized rap sheet disclosure" the Court concluded that the rap sheets were exempt from disclosure. *Id.*

Appellant's testimony and brief on appeal made it clear that to comply with his FOIA request the Board would have had to provide information that could reasonably be expected to constitute an unwarranted invasion of personal privacy within the meaning of D.C.Code § 1–1524(a)(2). Appellant is not requesting merely the neutral type of information describing the Board's procedures, *see United States Dept. of Justice v. Reporters' Committee for Freedom of the Press, supra,* —— U.S. at ——, 109 S.Ct. at 1482, but Board records about other Lorton inmates in the maximum security facility that show why a decision was or was not made by the Board to seek a reduction of sentence under D.C.Code § 24–201c. He told the trial judge that he wanted both an indexed inventory of such Board records and everything that supported the Board's decisions to seek reduction of a minimum sentence, including any information about bribery of public officials. Despite several opportunities at the hearing to do so, appellant did not distinguish between the information he requested and that identified by the Board as involving an unwarranted invasion of privacy of the inmates who are the subject of the requested information.

The Board's regulations provide that its records are personal and confidential to the prisoners who are the subject of the records. *See* 28 DCMR § 104.4 (1987) (Confidentiality of Parole Records). Disclosure of presentence reports to defendants under Super.Ct.Crim.R. 32(b)(2) & (3) is left to the discretion of the trial judge on a case by case basis, *Springs v. United States,* 311 A.2d 499 (D.C.1973), but the rule is silent on disclosure to third parties. *See United States Dept. of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988) (discussing cases limiting disclosure in absence of compelling demonstration that disclosure of report is required to meet the ends of justice). Furthermore, the Council of the District of Columbia has limited access to mental health information. D.C.Code § 6–2001 *et seq.* This framework for limiting disclosure of prisoners' records to third persons reflects the balancing of interests—the interest protected by the privacy exemption and the public interest in disclosure—by which the Supreme Court concluded that FBI rap sheets were protected against disclosure.[9] *See United States Dept. of Justice v. Reporters' Committee for Freedom of the Press, supra,* —— U.S. ——, 109 S.Ct. at 1477. While a FOIA request relating to the Board's procedures in evaluating minimum sentence applications may well escape the restrictions of § 1–1524(a)(2), appellant's request is not so limited.

■ Appellant cannot simply ask for a mass of documents, many of which are incontrovertibly exempt from production, and demand that the trial judge go through each document to determine if there is some part of it to which appellant may be entitled. The duty of the agency to identify reasonably segregable portions of

---

9. The government further contends that appellant's interest in the Board's procedures should be interpreted in light of the fact that a prisoner has no due process right to parole, *see Brandon v. D.C. Board of Parole,* 631 F.Supp. 435, 438 (D.D.C.1986), *aff'd* 262 U.S.App.D.C. 236, 823 F.2d 644 (1987), much less to have the Board file a request for reduction of the minimum sentence. Hence, it argues, any public interest in knowing what the Board is doing must be tempered by the broad discretion that is given to the Board. [Br. 8–9] Since appellant has not claimed a denial of equal protection, *Brandon, supra,* 262 U.S.App.D.C. at 242–43, 823 F.2d at 650–51, the government maintains, in view of the limited right of prisoners to parole or reduction of sentence, and the Board's broad discretion, that the public interest in learning of the Board's decisions is low. This is to be contrasted, the government argues, with the individual privacy interest of individual prisoners against public disclosure of intimate details of their lives. We need not address these contentions.

records which must be produced, pursuant to D.C.Code § 1–1524(b) (1987), and the obligation of the trial judge to conduct an *in camera* inspection, *see Washington Post Co. v. Minority Bus. Opp. Comm'n,* 560 A.2d 517, 522–23 (D.C.1989), presuppose a request more focused than "give me all you have and, if you must, redact the names."

Accordingly, the judgment is affirmed.[10]

---

**10.** Appellant's contention on appeal that his due process rights were violated by the motions judge's denial of his request for the appointment of counsel is meritless. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (state criminal prosecutions); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Monroe v. United States,* 389 A.2d 811, *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). *See also United States v. Hamid,* 461 A.2d 1043 (D.C.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 718, 79 L.Ed.2d 180 (1984).