*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1333

FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE LABOR COMMITTEE, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-618-09)

(Hon. Craig Iscoe, Trial Judge)

(Argued May 14, 2015                    Decided September 17, 2015)

*Paul A. Fenn*, with whom *Hannah Kon* was on the brief, for appellant.

*Mary L. Wilson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*: This is a post-remand appeal in an action under the District of Columbia Freedom of Information Act ("FOIA"),[1] in which the Fraternal Order of Police, Metropolitan Police Labor Committee ("FOP") obtained files of internal disciplinary proceedings against senior officers of the Metropolitan Police Department ("MPD"). The FOP challenges the Superior Court's approval on summary judgment of the MPD's redaction of the disciplinary files to protect the anonymity and personal privacy of the officers involved in the proceedings. The principal dispute concerns the MPD's redaction, in some of the files, of the gender and race of the disciplined officers and the dates of relevant events. The FOP agrees that, in accordance with FOIA's personal privacy exemption, the officers should not be identified. It contends, however, that disclosure of gender, race, and related event dates does not implicate a privacy interest because "there is no circumstance" in which such disclosure plausibly could lead to a subject officer's identification in a police force as large as the MPD.[2] We are not persuaded by the FOP's arguments, and we affirm the judgment of the Superior Court.

---

[1] D.C. Code §§ 2-531–2-540 (2012 Repl.).

[2] Reply Br. for Appellant 12–13.

## I. Background

In November 2008, the FOP submitted twenty separate FOIA requests to the MPD for documents generated in connection with internal disciplinary proceedings against officers of specified upper ranks for particular offenses in particular years. Illustratively, one request sought all documents regarding any lieutenant who was disciplined during the year 2007 for "Conduct Unbecoming for inappropriate disciplining of a child or any other similar violation." A separate request sought records of any lieutenant disciplined in 2007 for "Untruthful Statements." Similar requests were made with respect to disciplinary files of police inspectors, captains, commanders, and assistant chiefs. There were separate requests, for instance, relating to any officer at the rank of captain or above disciplined in 2007 for "Absent Without Official Leave," and to any assistant chief disciplined that year for "Neglect of Duty for failure to provide[] direction."

The MPD denied each of the requests, citing the FOIA exemption for "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."[3] The FOP

---

[3] D.C. Code § 2-534 (a)(2).

thereupon brought the present FOIA action. In May 2009, the Superior Court granted summary judgment in the FOP's favor, ordering the MPD to produce the requested disciplinary files, redacted of information that would identify the subject officers. On the District's appeal, we held in an unpublished opinion that the requested documents should be produced under FOIA "if they can be appropriately redacted," and we remanded the case for the trial court to conduct an *in camera* review "to determine whether the documents when properly redacted are intelligible and of value to the FOP."[4]

### A. The District's Initial Production of Redacted Documents for *In Camera* Review

On remand, the FOP confirmed that it was "not interested in obtaining the personal information of the disciplined MPD officers referenced in the subject disciplinary files," and it agreed that the MPD should redact "names, the officer's rank and district, home addresses, birth dates, social security numbers or other personal identifiers, and physical descriptions of individuals." Even with such redactions, the FOP explained, "the officers' conduct, facts surrounding the

---

[4] *District of Columbia v. Fraternal Order of Police Metro. Police Labor Comm.*, Nos. 09-CV-758, 09-CV-920 at 2 (Jan. 24, 2012) (citing Judge Ruiz's concurring opinion in *District of Columbia v. Fraternal Order of Police Metro. Police Labor Comm.*, 33 A.3d 332 (D.C. 2011)).

conduct, basis for the discipline, aggravating and mitigating factors considered, evidence included in the record or submitted at any hearing, and the actual discipline imposed will all be disclosed." This information, the FOP proffered, would be useful in its efforts to "educate, prepare, and defend police officers who are faced with disciplinary action" and to "ensur[e] that the MPD disciplines officers in a consistent and just manner."

Pursuant to the court's direction, to carry out our instructions on remand, the District submitted five sample disciplinary files, in both a redacted and an unredacted format, for *in camera* review. The files in this initial production comprised thousands of pages. The District provided the redacted set to the FOP as well.

At a status hearing on June 22, 2012, the FOP confirmed that the redacted files were intelligible and of value to it. Nonetheless, it argued that the MPD had redacted more information than necessary to protect the unidentified officers' anonymity and personal privacy. The FOP gave the court and the MPD a binder of pages from the five sample files displaying what it considered to be excessive redaction. In some instances, entire sentences or paragraphs had been blacked out. For its part, the court expressed the preliminary view that the MPD's redactions

appeared to be generally reasonable, apart from some obviously inadvertent mistakes (which the District conceded). The court directed the parties to confer and try to agree on which redactions were appropriate.

A month later, at the next status hearing, the parties reported having made progress, but some redactions in the five sample files were still in dispute.[5] Stating that, in general, it found the MPD's remaining redactions to have been reasonable, the court cautioned the District not to be "overly active in redacting" and urged the parties to continue working to resolve their outstanding disagreements. The District agreed to produce the rest of the disciplinary files covered by the FOIA request.

### B. The Redactions in the District's Production of the Remaining Responsive Files

On December 14, 2012, the parties appeared before the court once again. By this time, the District had produced redacted copies of all the remaining

[5] One particular contested redaction discussed at the hearing concerned the possible effect of a pregnant officer's psychiatric treatment and medication on her job performance. The District argued, and the court agreed, that the disclosure of this information would make it easier for the FOP to identify the officer and thus result in a serious invasion of her privacy.

disciplinary files (in what the parties have referred to as the District's second production, to distinguish it from the initial production of five sample files). But disagreements remained regarding the District's redactions, which the parties addressed at the hearing and in subsequent briefing.

First, claiming that the sample files in the District's initial production had been redacted more heavily than the 26 files in the second production, the FOP argued that this inconsistency demonstrated that the sample files had been over-redacted and needed to be re-produced with fewer deletions. The District disagreed, contending that the sample files had been redacted in accordance with FOIA's requirements even if they did contain more redactions than the other files.

Second, despite its prior agreement that the District should redact physical descriptions and other identifiers of officers involved in the disciplinary proceedings, the FOP objected to the redaction of references to gender, race, and event dates in some of the documents in the two productions. It argued that this information could not reveal the identities of any officers, given that the police force had nearly 4,000 members. In response, the District explained that the MPD

had removed references to gender, race, and event dates in the disciplinary files only where it believed the information actually would enable the FOP and its members to identify the officers in question. Identification would be easier than the FOP suggested, the District argued, because the FOIA requests targeted disciplinary proceedings involving only higher ranking officers, who constituted a subset of the police force.

## C. The Superior Court's Ruling

The court ruled on the FOP's objections at a hearing on August 30, 2013. Regarding the sample files produced for *in camera* inspection, the court stated that it had "exhaustively" performed "a very detailed," "comprehensive" examination of all of the submitted documents in unredacted and redacted form. Based on that examination, the court concluded that all the redactions were proper, regardless of whether there were fewer redactions in the files subsequently produced. The court

therefore rejected the FOP's call for the District to re-redact and re-produce the first group of five disciplinary files.

The court also upheld the MPD's excision of references to gender, race, and event date in order to prevent unwarranted invasions of personal privacy. It was not persuaded by FOP's contention that these redactions were unnecessary to protect the anonymity of disciplined officers in view of the total size of the police force. "[I]n many cases," the court found, the revelation of gender, race, or date information could enable the FOP to identify individuals involved in the disciplinary proceedings, and the risk of such identification by FOP members with "specialized knowledge" of the MPD or personal familiarity with the disciplined officers was "not trivial." For example, the court noted, the FOP might have little difficulty overcoming the anonymity of an officer with "a relatively uncommon combination of race and gender . . . , particular[ly] if it's possible to determine what district the officer was assigned in, dates [o]n which [the officer] worked," or other facts that would aid the identification process. The court emphasized that the MPD had not applied an "inflexible policy" of redacting *all* references in the disciplinary files to gender, race, and date, because it appropriately recognized that the risk of identifying a subject officer varied from case to case.

The court further found that the personal privacy interests implicated by the redactions "greatly outweighed" any public interest that the FOP had proffered in calling for disclosure of the gender, race, and date data. Disclosure of the identities of the officers subject to police discipline could expose them to public humiliation and affect their professional and personal relationships. Against the officers' consequent interest in preserving their anonymity by means of the challenged redactions, the FOP had asserted its interests in educating and defending police officers faced with disciplinary action, and in ensuring that "discipline is being applied equally across racial and gender lines." The court found that the former is a private interest of the FOP rather than a public interest, and that, in any event, the FOP did not need the redacted information in order to educate and defend officers properly. As for uncovering racial or gender disparities in discipline, the court reasoned that the FOP could accomplish this goal without jeopardizing the privacy of individuals by getting composite statistical information about the gender and race of disciplined officers.[6]

---

[6] In balancing the public and privacy interests at stake, the court initially cited this court's opinion in *Hines v. District of Columbia Board of Parole*, 567 A.2d 909 (D.C. 1989), for the proposition that the personal privacy exemption is "broader" than the other exemptions in the D.C. FOIA. The FOP argued that this was a misreading of *Hines*, and that the presumption in favor of disclosure is "as broad" when personal privacy is invoked as it is when any other FOIA exemption is asserted. Even so, the court responded, the balance of interests still "very clearly" justified the challenged redactions.

## II. Discussion

We review *de novo* the grant of summary judgment in this FOIA case, including the Superior Court's determination that the District had justified its redactions under FOIA's exemption for "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."[7]

In this appeal, the FOP challenges the redactions in both the District's first production of the five sample disciplinary files and its subsequent production of the remaining twenty-six files responsive to the FOIA request. But as we shall explain, the FOP has not preserved the record necessary for appellate review of its objections to the redactions in the first production. Consequently, we limit our merits consideration to the FOP's challenges to the redactions of gender, race, and event date in the District's second production. As to those, the FOP contends that the redactions did not protect a valid privacy interest because "[w]ithout knowledge of the identity of the individuals," and in view of the size of the police

---

[7] D.C. Code § 2-534 (a)(2); *see District of Columbia v. Fraternal Order of Police, Metro. Police Dep't Labor Comm.*, 75 A.3d 259, 264–65 (D.C. 2013) (hereinafter referred to as *FOP 2013*). The redaction of "reasonably segregable" exempt portions of public records is authorized by D.C. Code § 2-534 (b).

force, "it is *impossible* that any privacy interest was implicated" by the gender, race, and date information withheld from disclosure.[8] The FOP further contends that the public interest in disclosure outweighed any valid privacy interest served by the redactions of that information.

## A. Redactions in the District's First Production

Trial court rulings "come with a presumption of correctness and . . . it is the responsibility of the appellant to furnish an appellate record evidencing the claimed trial court error."[9] Failure of the appellant to fulfill this responsibility "precludes appellate review of the alleged error."[10]

---

[8] Br. for Appellant 15 (emphasis added).

[9] *Hill v. Medlantic HealthCare Grp.*, 933 A.2d 314, 335 n.21 (D.C. 2007) (internal quotation marks omitted); *see also Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C. 1982) ("The responsibility of perfecting the record remains with appellant and cannot be shifted to either the trial court or this court." (internal quotation marks omitted)); D.C. App. R. 11 (a) ("An appellant filing a notice of appeal must comply with Rule 10 (b) [concerning the appellant's duty to order the necessary transcript of proceedings] and must do whatever else is necessary to enable the Clerk of the Superior Court to assemble and forward the record.").

[10] *Mbakpuo v. Ekeanyanwu*, 738 A.2d 776, 780 (D.C. 1999).

Although it contends that the Superior Court erred in approving unnecessary redactions in the five sample disciplinary files examined *in camera*, the FOP has failed to ensure that the documents necessary for us to evaluate this contention are before us in the record on appeal. The FOP did not arrange for the unredacted files to be transmitted to us under seal,[11] nor for the redacted files or even its binder of sample redacted pages to be included in the record on appeal. As a result, this court has no way to identify the redactions still in dispute, let alone to assess whether those redactions were proper.[12] That the redactions in the first production may have been more extensive than those in the subsequent production (which is something else we cannot verify) is too superficial a comparison to demonstrate

---

[11] "Any documents the court has reviewed in camera to which court personnel . . . do not have routine access cannot be part of the record transmitted to us unless the trial court so directs under proper security procedures—a transmittal that [appellant's] counsel has responsibility to arrange by filing a proper motion with the trial judge." *Hammon v. United States*, 695 A.2d 97, 102–03 (D.C. 1997) (holding that a trial court's determination of competency could not be reviewed on appeal where the appellant failed to arrange for the transmittal of the records that the trial court reviewed *in camera*).

[12] Unsurprisingly, in FOIA cases where trial courts have reviewed records *in camera* to evaluate the government's claimed exemptions, appellate courts generally find it necessary to review the documents *in camera* as well. *E.g. Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 n.2 (2d Cir. 1999); *Spirko v. U.S Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Hale v. U.S. Dep't of Justice*, 99 F.3d 1025, 1029 n.4 (10th Cir. 1996); *Patterson v. FBI*, 893 F.2d 595, 601 (3d Cir. 1990); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116, 1123 (9th Cir. 1988); *Arenberg v. DEA*, 849 F.2d 579, 581 (11th Cir. 1988).

that the Superior Court, which actually examined the redactions in the first production, erred in finding them justified.[13]

## B. The Gender, Race, and Date Redactions

We turn now to the FOP's challenge to the Superior Court's determination that the MPD's redaction of references to gender, race, and event date were proper under FOIA's exemption for information "of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."[14]

"The term 'unwarranted' requires us to 'balance the public interest in disclosure against the privacy interest Congress [and the Council of the District of

---

[13] The FOP charges that the Superior Court acknowledged during the status hearings that the District's first production contained redaction errors, yet allowed those errors to go uncorrected. That is not how we read the record. To the contrary, the District agreed to correct certain mistaken redactions identified during the first status hearing, and the parties ultimately reported to the court that they had conferred and resolved some of their disagreements. In the end, the court reviewed all the remaining redactions *in camera* and found them proper.

[14] D.C. Code § 2-534 (a)(2).

Columbia] intended the exemption to protect.'"[15]   Because FOIA mandates disclosure unless a privacy interest is implicated, our initial inquiry under this exemption is "whether there is any privacy interest at stake in the information sought."[16]

The privacy interest that is entitled to protection "encompasses the individual's control of information concerning his or her person, including names, addresses, and other identifying information."[17]   "Moreover, individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature."[18]   While disclosures of personal information may amount to only *de minimis* invasions of privacy when the identities of the individuals involved are withheld, "the privacy interest that would be compromised by linking the personal information to particular, named individuals is greater than *de minimis*."[19]

---

[15] *FOP 2013*, 75 A.3d at 265 (quoting *Padou v. District of Columbia*, 29 A.3d 973, 982 (D.C. 2011)).

[16] *Id.*

[17] *Id.* at 265–66 (internal quotation marks omitted).

[18] *Id.* at 266.

[19] *Id.* at 267 (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991)).

If the court finds that a "more than *de minimis*" interest in the privacy of personal information is implicated, the burden shifts to the requester to demonstrate that disclosure of the withheld information would advance a significant public interest, and that the public interest in disclosure outweighs the privacy concern.[20] "Otherwise, the invasion of privacy is unwarranted."[21] "The only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding *of the operations or activities of the government*.'"[22] Thus, to overcome the privacy interest at stake, the requestor must show at a minimum that the withheld information will "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."[23] For the purposes of the balancing required under FOIA, there is no cognizable public interest in "information about private citizens

---

[20] *Id.* at 265; *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *U.S. Dep't of Defense v. Fed. Labor Rel'ns Auth.*, 510 U.S. 487, 495-97 (1994).

[21] *Favish*, 541 U.S. at 172.

[22] *U.S. Dep't of Defense v. Fed. Labor Rel'ns Auth.*, 510 U.S. at 495 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989)) (emphasis in the original).

[23] *FOP 2013*, 75 A.3d at 266 (quoting *U.S. Dep't of Defense v. Fed. Labor Rel'ns Auth.*, 510 U.S. at 497).

that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."[24]

In the present case, there is no dispute that police officers subject to departmental disciplinary proceedings have far more than a *de minimis* privacy interest in not being publicly identified. The propriety of redactions reasonably necessary to ensure their anonymity is not in doubt. "[E]ven with names redacted," the disclosure of other personal information may result in an invasion of their privacy because individuals "can often be identified through other, disclosed information" and the "later recognition of identifying details."[25] The FOP argues only that disclosure of gender, race, and related event dates does not implicate the officers' privacy interest here, "because it *cannot* lead to the identification of the subject officer."[26] This argument is categorical in nature; it is not based on the FOP's contextual analysis of each (or any) challenged redaction to assess whether the withheld information might help it identify the subject officer. On the contrary, the FOP contends that "[a] redaction-by-redaction analysis was not (and is not

---

[24] *Reporters Comm.*, 489 U.S. at 773.

[25] *Id.* at 769.

[26] Reply Br. for Appellant 9 (emphasis added).

now) necessary to determine whether it is proper under the D.C. FOIA for the District to redact the race and gender designations and the event dates contained in the subject disciplinary files."[27] That is so, the FOP asserts, because "there is no circumstance, and certainly not one that is more probable than a remote possibility, in which disclosure of race or gender [or event date] would identify a particular officer in a 3,915-member police force with 915 female officers, 279 Hispanic officers, and 63 Asian officers."[28]

This assertion did not persuade the Superior Court, and it does not persuade us. In the first place, the size and composition of the police force as a whole are irrelevant, because the information that the FOP sought and received was restricted to a small subset of that force, its lieutenants, captains, and other high ranking officers.[29] And second, as the Superior Court rightly appreciated, "what constitutes

---

[27] *Id.* at 5. Consistent with this position, the FOP does not contend that the Superior Court abused its discretion by not reviewing the redactions *in camera*, and we do not perceive any basis for such a contention. *See generally Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392-93 (D.C. Cir. 1987).

[28] Reply Br. for Appellant 12–13. The FOP relies on published statistics in the MPD's 2007 Annual Report, which are cited by the District in its brief on appeal. In the Superior Court, the FOP relied primarily on the fact that the Metropolitan Police Force had approximately 4,000 members at the relevant times.

[29] In 2007, according to other data from the MPD's Annual Report that the District cites in its brief, there were 163 lieutenants, 45 captains, and 37 other

*(continued…)*

identifying information regarding a subject . . . must be weighed not only from the viewpoint of the public, but also from the vantage of" the FOP's members who would have been familiar with the MPD's operations and personnel.[30] Given the particularization of the FOP's individual FOIA requests and with the information disclosed in the files, including the details of the disciplinary infraction, the year (or narrower time frame) in which the infraction occurred, and various other facts, FOP members interested in identifying the subject of the disciplinary proceedings and familiar with the Police Department would have little difficulty winnowing down the possibilities to only a few candidates. It is quite plausible that, in many cases, the additional clues provided by the officer's gender or race or the specific date of a key event would enable such a curious and well-informed reader to eliminate all but one of those possible suspects. In the absence of any evidence to the contrary, or of bad faith on the part of the MPD, its considered judgment on this score is entitled to respect.[31] Thus, the FOP's mere assertion to the contrary

---

*(continued…)*
command personnel (including inspectors, commanders, assistant chiefs, and the Chief of Police). The FOP has not questioned these figures.

[30] *Dep't of the Air Force v. Rose*, 425 U.S. 352, 380 (1976).

[31] *See Carter*, 830 F.2d at 391 (holding that "[i]n the absence of any conflicting evidence," the court will "give some credence to the agency's familiarity" with the subject matter in evaluating its determination that releasing certain information "would lead to identification"); *cf. Hines*, 567 A.2d at 913–14

*(continued…)*

fails to persuade us that the Superior Court erred in finding that a more than trivial privacy interest was implicated by the redacted gender, race, and date information.[32]

This privacy interest was not outweighed by any public interest favoring disclosure that the FOP identified. The FOP's interest in using the withheld information to educate and defend police officers facing disciplinary action is a private interest of the FOP and its members, not a public interest as that term is

---

*(continued…)*
(noting that it is the "duty of the agency to identify reasonably segregable portions of records which must be produced").

[32] The FOP argues that the invalidity of the redactions is shown by the MPD's inconsistent approach to making them. We disagree. That the MPD took a discriminating approach in deciding whether to redact references to gender, race, and event dates, rather than excising all such references across the board, is only to be applauded; we see nothing suspect about the MPD's judgment that such references were identifying in some but not all cases.

The FOP also argues that the Superior Court erred by starting from the premise that the personal privacy exemption is "broader" than other FOIA exemptions. *See* note 6, *supra*. Whatever this comment meant, however, we see no reason to think that any misconception as to the scope of the personal privacy exemption led the court astray in its determination that the redactions implicated a more than *de minimis* privacy interest, in balancing that interest against the putative public interests advanced by the FOP, or in any other respect.

used in FOIA litigation.[33] The public does have an interest in the disclosure of disparate treatment based on gender or race in the MPD's disciplinary proceedings. But when there is a protected privacy interest and the asserted public interest is the discovery of governmental misconduct, "the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."[34] The FOP produced no evidence of inconsistent discipline by the MPD based on gender or race, and the record is devoid of such evidence. "The speculative nature of FOP's asserted hypothetical public interest is simply insufficient for us to give it weight as a public interest."[35]

---

[33] *See U.S. Dep't of Defense v. Fed. Labor Rel'ns Auth.*, 510 U.S. at 497–500 (explaining that a union's interest in obtaining information to enhance its collective bargaining activities and member relations is not a public interest in disclosure for purposes of FOIA's balancing analysis because it is outside the ambit of the public interest FOIA was enacted to serve); *Carter*, 830 F.2d at 390 n.8 (interest in defending target of disciplinary investigation not a public interest); *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 451 (D.D.C. 2014), *aff'd* 2015 U.S. App. LEXIS 11150 (D.C. Cir. June 29, 2015) (prisoner's interest in challenging the loss of his good time not a public interest).

[34] *Favish*, 541 U.S. at 174; *accord FOP 2013*, 75 A.3d at 268.

[35] *FOP 2013*, 75 A.3d at 268.

### III. Conclusion

For the foregoing reasons, we find no error in the rulings challenged on appeal and, accordingly, we affirm the judgment of the Superior Court.

*So ordered.*